**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CUPERTINO UNION SCHOOL DISTRICT, | Case No.  13-cv-04659-BLF |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | [Re:  ECF 45] |
| K.A., BY AND THROUGH S.A. AND J.S., et al., | |
| Defendants. | |

In this appeal pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, plaintiff Cupertino Union School District ("District") seeks judicial review of adverse rulings rendered by Administrative Law Judge Margaret Broussard ("ALJ") of the California Office of Administrative Hearings ("OAH") on two of three issues presented at a five-day due process hearing.  The District also appeals the ALJ's award of compensatory services to student K.A. based on those adverse rulings.  Defendant and counterclaimant S.A. is K.A.'s father ("S.A." or "Father"), who is proceeding *pro se* to vindicate his independent right to a free appropriate public education ("FAPE") for his child pursuant to the IDEA.  *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  Father seeks judicial review of the ALJ's ruling on the third issue, on which the ALJ ruled in the District's favor.

Presently before the Court is the District's Motion for Summary Judgment.[1]  On September 4, 2014, the Court heard oral argument on the motion, after which it deemed the matter

---

[1] Father did not move for summary judgment on his counterclaims against the District, though this Court set a briefing schedule for cross-motions for summary judgment on May 30, 2014.  ECF 31. In view of Father's *pro se* status, the Court set a bench trial on Father's counterclaims for December 12, 2014.  ECF 56.  As such, the present order addresses only the issues on which the District has moved for summary judgment.

United States District Court
Northern District of California

submitted.  Having carefully considered the administrative record as well as the parties' respective written submissions and oral argument, the District's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and the issue of remedies is remanded to the ALJ for further evidentiary development and consideration consistent with this order.

## I.   BACKGROUND

### A.   Statutory Background

This appeal concerns student K.A., a disabled child who is eligible for special education and related services under the IDEA.  The IDEA provides state and local agencies with federal funding to assist in educating children with disabilities, conditioned on compliance with certain goals and procedures.  20 U.S.C. § 1412(a); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) ("*Ojai*").  One such condition is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).

To achieve this purpose, the IDEA provides for a cooperative process between parents and schools that culminates in the creation of an Individualized Education Plan ("IEP") for every disabled student.  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005).  The IEP is developed by a team comprised of the parents, at least one regular education teacher and one special education teacher of the student, a representative of the local educational agency, and, at the district or parents' discretion, others knowledgeable about the student.  20 U.S.C. § 1414(d)(1)(B).  The IEP "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide," *Schaffer*, 546 U.S. at 53, and must be reasonably calculated to enable the child to receive "meaningful" education benefit.  *N.B. v. Hellgate Elementary Sch. Dist., ex rel. Bd. of Dirs., Missoula Cnty., Mont.*, 541 F.3d 1202, 1212-13 (9th Cir. 2008); *see* U.S.C. § 1414(d)(1)(A).

A school district "must comply both procedurally and substantively with the IDEA."  *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 644 (9th Cir. 2005).  The cooperative process between parents and schools is one such important procedural safeguard to which schools must adhere in

developing an IEP. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 206–07 (1982); *see also Ojai*, 4 F.3d at 1469; *Amanda J. ex rel Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001). Not all violations of IDEA procedures result in a denial of a FAPE to a student. *R.B., ex. rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 938 (9th Cir. 2007). Thus, in considering whether a school district has denied a student a FAPE, courts must undertake a two-part inquiry: first "determine whether the school district 'complied with the procedures set forth in the Act,'" and second, "determine whether 'the individualized educational program developed through the Act's procedures [was] reasonably calculated to enable the child to receive educational benefits.'" *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 852 (9th Cir. 2014), *as amended* (Oct. 1, 2014) (quoting *Rowley*, 458 U.S. at 206–07). "However, the court need not reach the question of substantive compliance if the court finds procedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, or that caused a deprivation of educational benefits." *N.B.*, 541 F.3d at 1207 (quoting *Amanda J.*, 267 F.3d at 892).

In the event a student's parents believe that the district is not complying with the IDEA's procedural or substantive requirements, statutory safeguards entitle the parents to "'an impartial due process hearing' conducted either by the state or local educational agency." *Ojai*, 4 F.3d at 1469. After a due process hearing, "any party aggrieved by the findings and decision" of the administrative proceedings may file a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). The District invoked this right to judicial review after the ALJ ruled adversely to it on two of three issues presented during an administrative due process hearing. Father cross-appeals the third issue, on which the ALJ ruled in the District's favor.

**B.    Factual Background**

K.A. is a twelve year old boy with regressive autism who moved into the District at the beginning of the 2010-11 school year. Since February 2011, K.A. has been eligible for special education as a "student with autistic-like behaviors." OAH Decision 4, ¶ 1.[2] For the 2011-12

---

[2] Available as part of the administrative record submitted by the District at ECF 38-4, pp. 55-114. The administrative record ("AR") page numbers stamped at the top of each page are, for the most

school year, K.A. was initially placed in a moderate to severely handicapped special day class at Eisenhower Elementary School taught by Mrs. Vicky Broumas, until Parents removed K.A. in April 2012 following a series of seizures both in the classroom and on the school bus.  *Id.* at 6, ¶ 8. This appeal concerns the District's efforts to develop an annual IEP for the 2012-13 school year, as well as its response to the requests made by K.A.'s parents—S.A. and J.S. (collectively, "Parents")—after K.A. suffered his seizures in April 2012.  Parents filed due process complaints on March 18, 2013 and April 2, 2013, raising issues addressed in a single consolidated due process hearing.  By way of introduction, the issues presented to the ALJ, after development at a prehearing conference, were as follows:

> (I)     Did the District unilaterally predetermine the Student's individualized education program (IEP) in an IEP offer dated March 29, 2012, which denied Student a free appropriate public education (FAPE)?
>
> (II)    Did the District deny Student a FAPE at an IEP meeting on May 31, 2012, by denying Parents' request for home-hospital instruction because of Student's medication?
>
> (III)   Did the District deny Student a FAPE for the 2012-13 school year (SY) by not providing him with home-hospital instruction and related services following an August 29, 2012, agreement, that it would do so?

OAH Decision 2.

### i.   The February 16, 2012 to March 29, 2012 IEP Process

On February 16, 2012, the District convened K.A.'s annual IEP meeting for the 2012-13 school year with Parents, K.A.'s IEP team members, and an employee from Center for Autism and Related Disorders ("CARD") in attendance.[3]  *Id.* at 6, ¶ 9.  In advance of the meeting, Parents sent the District a set of proposed goals for K.A. that they wanted the IEP team to consider, along with an independent developmental assessment of K.A. performed in August 2011 by Dr. Damon Korb,

---

part, illegible in the version submitted by the District.  As such, the Court's citations will be to the original page numbers, with appropriate cross-references to ECF page numbers.

[3] K.A.'s IEP team included Parents; Vicky Broumas, K.A.'s special education teacher; Shonia Porter, the District's speech and language therapist; Smita Chandru, occupational therapist; Shelly Ota, the District's special education coordinator; and the assistant principal at Eisenhower Elementary School.

1    MD, a Behavioral and Developmental Pediatrician and the Director of the Center for Developing

2    Minds.  *Id.* at 5, ¶¶ 6-7; 7, ¶ 13.  The District distributed Parents' proposed goals to the IEP team

3    members, but failed to distribute the Korb report prior to the team meeting.  *Id.* at 7, ¶ 16.  Thus,

4    when the IEP team initially discussed K.A.'s needs on February 16, 2012, it was without the

5    benefit of Dr. Korb's assessment and recommendations.  The meeting notes indicate that this

6    omission was discovered during the meeting and that the Korb report was distributed, read, and

7    briefly discussed by the IEP team members.[4]  *See* Mar. 29, 2012 IEP Offer at 27, ECF 38-6 at 31.

8         The team did not finish discussing K.A.'s goals and the Korb report on February 16, 2012.

9    As such, no placement offer was made, and the meeting was adjourned to be reconvened at a later

10   date.  OAH Decision at 8, ¶ 18.  Father requested that the meeting be reconvened before the end of

11   February, but due to a week-long school recess and the planned vacation of Mrs. Broumas, the

12   District could not schedule a follow up meeting before March.  *Id.* at 8, ¶¶ 18, 20.

13        Dissatisfied with the consideration given to the Korb assessment, and feeling that "the

14   District was not interested in parental input," Father filed a due process hearing complaint on

15   February 22, 2012.[5]  *Id.* at 8, ¶ 19.  On March 2, 2012, Ms. Ota emailed the parents to notify them

16   that the continuation meeting had been scheduled for March 9, 2012.  *Id.* at 8, ¶ 20.  Father, under

17   the mistaken impression that the IDEA's "stay put" provision prevented any further consideration

18   of the District's February 16, 2012 draft IEP during the pendency of Parents' due process

19   complaint, asked the District to cancel the March 9 meeting until Parents said otherwise.  *Id.*  The

20

21   _____

22   [4] The ALJ's factual findings indicate that the District "had not completed consideration of Dr.
     Korb's report" on February 16, 2012 without any further analysis of whether and to what extent
23   the report had already been considered on that date.  *See, e.g.*, OAH Decision at 8, ¶ 18; 9, ¶ 23;
     10, ¶ 24.

24   [5] As noted by the ALJ, the February 22, 2012 due process complaint, OAH case number
     2012020850, involved allegations that the District denied K.A. a FAPE by failing to implement a
25   goal from his February 2011 IEP and by failing to consider the Korb report in advance of the
     February 2012 IEP meeting.  The ALJ in that case—ALJ Deidre L. Johnson—denied K.A.'s
26   requests for relief on all issues.  OAH Decision at 4, ¶ 3.  As discussed below, ALJ Johnson found
     that the issue of the February 16, 2012 IEP meeting was not ripe for decision because no offer had
27   been made on that date and because the evidence indicated that the District did not come to that
     meeting with a predetermined offer and that the IEP team arrived with open minds, considered Dr.
28   Korb's report during the meeting, and were willing to continue to consider it at a continued IEP
     team meeting.  Pl.'s Request for Judicial Notice ("RJN"), Exh. C at 23, ECF 46.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    District and Father continued to correspond leading up to March 9, with the District attempting to

2    convince Parents that they could and should attend the scheduled IEP meeting and Father

3    reiterating the parents' refusal to attend due to "stay put." *Id.* at 9, ¶ 21.  On March 29, 2012,

4    noting its failed attempts to encourage Parents' attendance at an IEP meeting, the District sent to

5    Parents a completed IEP offer letter consisting of the February 16, 2012 draft goals, now finalized,

6    minutes from the meeting, and recommendations as to placement. *Id.* at 9, ¶ 22; *see also* Mar. 29,

7    2012 IEP Offer, ECF 38-6 at 1-33.

8         At the due process hearing underlying the present case, Ms. Porter, K.A.'s speech and

9    language therapist since January 2011, testified that she incorporated some, but not all, of Parents'

10   proposed goals into her draft goals for the February 16, 2012 IEP meeting.  Hr'g Tr. 46, ECF 39.

11   She confirmed that these goals were the same as the ones in the March 29, 2012 IEP offer letter

12   because the parents agreed to them verbally. *Id.* at 54.  The ALJ found credible Ms. Porter's

13   further testimony that she put her recommended service for K.A. into the IEP computer system in

14   March 2012 at the request of Ms. Ota, the program coordinator, and that she had no other contact

15   with anyone else from the District or the IEP team regarding her proposed speech and language

16   services. *Id.* at 70; OAH Decision at 10, ¶ 25.

17        In a similar vein, Ms. Chandru, K.A.'s occupational therapist, testified that at the February

18   16, 2012 meeting she added a fine motor skills goal of "being able to cut curved lines of one-

19   fourth inch thickness" to her proposal at Mother's request.  Hr'g Tr. 92, 114.  She considered the

20   parents' input and the Korb report but did not add any gross motor skills goals to the IEP because

21   she determined that K.A. did not need any based on communications with his teacher and her

22   personal observation. *Id.* at 104, 110, 136, 139.  The ALJ found credible Ms. Chandru's testimony

23   that she was asked by someone at the District whether she agreed with the occupational therapy

24   (OT) service offer to be placed in the March 29, 2012 letter and that she did agree. *Id.* at 147;

25   OAH Decision at 10, ¶ 25.

26        Mrs. Broumas drafted K.A.'s other goals for the February 16, 2012 meeting and testified

27   that the meeting was not completed on that date and that the team discussed convening a

28   subsequent IEP meeting.  Hr'g Tr. 16, 25.  The ALJ found credible her testimony that she did not

recall being consulted about the contents of the March 29, 2012 offer.  OAH Decision 10, ¶ 25.

Finally, Ms. Ota testified that she considered the parents' input at the February 16, 2012 meeting and then attempted to arrange a subsequent meeting to complete the IEP process on March 9 or 10.  Hr'g Tr. at 124.  After receiving the responses from Father requesting that the District cancel further meetings pending the outcome of the due process hearing, Ms. Ota testified that she asked each of the IEP team members for recommendations before making the March 29, 2012 offer.  *Id.* at 150-55.  The ALJ did not find credible Ms. Ota's testimony that the placement offer was collectively created by the IEP team because her testimony was contradicted by that of Ms. Porter, Ms. Chandru, and Mrs. Broumas, and because Ms. Ota provided no email evidence to corroborate her testimony.  OAH Decision at 10, ¶ 26.

Based on the foregoing facts and credibility findings, the ALJ found that the District had a duty to convene and complete an IEP team meeting even after Parents indicated that they would not participate.  *Id.* at 11, ¶ 28.  Because the March 29, 2012 offer was "not made through any collaborative effort with the rest of the IEP team," *id.*, the ALJ found that the District had "predetermined all parts of the IEP that were not discussed at the February 16, 2012, IEP team meeting when it sent Parents the take-it-or-leave-it offer of placement in the March 29, 2012 letter and accompanying IEP documents."  *Id.* at 29, ¶ 14.  The ALJ found that this "procedural violation significantly impeded parental participation in the IEP process to the extent that parental participation was possible given Parents refusal to attend the continuation of the IEP team meeting" and also "denied [K.A.] an educational opportunity by causing Dr. Korb's report, the goals and the placement offer to receive insufficient consideration," thereby denying K.A. a FAPE from March 29, 2012 to May 31, 2012.  *Id.* at 29, ¶ 16; 30, ¶ 18.

### ii.  The District's Response to K.A.'s Medical Condition After March 29, 2012[6]

On April 9, 2012 K.A. had a seizure at school, and on April 23, 2012 K.A. suffered another seizure on the school bus ride home.  OAH Decision 12, ¶¶ 33-34.  Following these

---

[6] The following facts pertain to Issue 2, on which the ALJ ruled in the District's favor, and on which Father cross-appeals.  This issue is not substantively addressed in this order, but the relevant facts are provided for context.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  incidents, Parents did not return K.A. to school because he needed to adjust to prescribed seizure

2  medication and to be monitored.  Parents did, however, request that the District provide a one-to-

3  one aid in the classroom to support K.A.  *Id.* at 12, ¶ 35.  On May 31, 2012, the District convened

4  an "emergency" IEP meeting to discuss K.A.'s medical as well as educational needs.  The District

5  explained that in order for the District to provide instruction at a student's home, state law

6  required a doctor's note stating the diagnosis, certifying that the condition prevented the student

7  from attending a less restrictive placement, and projecting a calendar date for the student's return

8  to school.  *Id.* at 13, ¶ 36; 14, ¶ 39.  Because Parents had not provided such a doctor's note, the

9  District did not offer home-hospital instruction and instead offered an aide to support K.A. for the

10  entire school day, but no aide support on the school bus.  *Id.* at 14, ¶¶ 39-40.

11       The District held another IEP meeting on June 8, 2012, which contained a different offer of

12  placement and services from the May 31, 2012 IEP, including "increased OT services and

13  different goals and objectives."  *Id.* at 14, ¶ 41.  Because the June 8 offer was not before her, the

14  ALJ did not decide the procedural or substantive appropriateness of that IEP, finding it "relevant

15  in this matter only as it relates to the duration of the District's May 31, 2012 IEP offer, which was

16  superseded by the offer made at the June 8, 2012, IEP team meeting."  *Id.*  The ALJ did

17  acknowledge that the June 8, 2012 meeting also included consideration of Dr. Korb's report,

18  including his recommendations for ABA instruction.[7]  *Id.* at 11, ¶ 31; 30, ¶ 18.

19       K.A.'s seizures continued through the summer, and on August 27, 2012 Father sent a letter

20  to the District stating his concerns regarding the inadequacy of the District's placement offer.

21  Father attached a letter from K.A.'s neurologist, Dr. Christopher Lee-Messer, which indicated that

22  K.A. would likely need home instruction for another 2-3 months.  *Id.* at 15, ¶ 44.  The District

23  subsequently offered an IEP "amendment" on August 29, 2012 offering "temporary" home-

24  hospital instruction for 90 days from the date of the letter.  The offer provided for five hours per

25  week of instruction, speech and language therapy of 60 minutes per week, and 60 minutes of OT

26  consultation per month.  The offered amendment was made without an IEP meeting, and Father

27

28  _____

[7] Applied behavioral analysis ("ABA") is a methodology for behavioral intervention that is
frequently employed in special education settings.

1    signed the offer letter on September 10, 2012.  *Id.* at 15, ¶ 45.

2          **iii.  Implementation of K.A.'s August 29, 2012 Home-Hospital Instruction IEP**

3          Once Parents had accepted the District's August 29, 2012 IEP "amendment," special

4    education director Jennifer Keicher sent a series of emails to District personnel looking for a

5    teacher who could provide the offered special education services.  Interested teachers were

6    directed to contact Parents directly via email.  *Id.* at 16, ¶ 49.  It is undisputed that the District had

7    difficulty implementing the IEP amendment, and the District readily admits that it did not deliver

8    a portion of the services offered.  *Id.* at 15, ¶ 47.  The evidence developed at the hearing indicates

9    that two special education teachers, Emily Kuglics and Lynn Membreno, contacted Parents but

10   were available only during after-school hours.  *Id.* at 16, ¶¶ 51, 52.  Despite attempts on both sides

11   to accommodate each other's schedules—K.A., at the time, was also receiving in-home ABA

12   services procured by Parents—it appears that crossed or missed communications led to frustration.

13   *Id.* at 16, ¶¶ 51-53.  The ALJ did not give weight to the conflicting testimony regarding missed

14   emails when determining whether Parents cooperated with the District, but found that Parents at

15   no time offered a "take-it-or-leave-it time period that [K.A.] was available" and that the

16   scheduling constraints were those of the District's staff.  *Id.* at 17, ¶ 54.

17         Likewise with the offered speech and OT services, the District staff providers, Zack

18   Buffum and Smita Chandru, respectively, had scheduling constraints and other conflicts that

19   impeded their ability to provide regular service to K.A. in his home.  *Id.* at 17-18, ¶¶ 55-61; 21-22,

20   ¶¶ 72-74.  The ALJ found the District unreasonable for insisting that services be provided outside

21   of K.A.'s regular school day and credited Parents with a continual willingness to change K.A.'s

22   schedule, which was admittedly "rather full with therapy," to accommodate the teachers'

23   schedules.  *Id.* at 19, ¶ 63.  Finally, on November 1, 2012, Ashley Cheechoo, a special education

24   teacher, contacted Parents and was able to agree to a schedule by which she provided the home-

25   hospital teacher services in November and December, and until the winter break.  *Id.* at 19, ¶ 64.

26         On November 13, 2012, Ms. Keicher wrote to Parents to inform them that the August 29,

27   2012 home-hospital offer would expire on November 29, 2012 unless Parents provided a new

28   doctor's note.  Parents responded noting the delay in services and that Ms. Cheechoo had agreed

1    to work with K.A. until the winter break.  *Id.* at 19, ¶ 66.  Although a doctor's note was not

2    forthcoming, Ms. Keicher decided to extend services through December in anticipation of a note.

3    However, because Parents had difficulty making an appointment with K.A.'s neurologist, they did

4    not secure a note until February 5, 2013.  In the meantime, the District unilaterally discontinued

5    services in January 2013 and resumed services on February 13, 2013 after receiving the new note

6    from Dr. Lee-Messer.  All of this was done without convening a new IEP team meeting or making

7    any amendment.  *Id.* at 19-20, ¶ 67.

8            The District held an annual IEP meeting for K.A. on March 15, 2013 and generated an

9    amendment on March 28, 2013 that Parents subsequently signed on April 3, 2013.  The ALJ found

10   that the March 28, 2013 offer constituted a new offer of placement that terminated any claim

11   regarding the implementation of the August 29, 2012 IEP on March 28, 2013.  *Id.* at ¶ 68.  The

12   ALJ further found that the District's claim that the August 29, 2012 IEP was a temporary,

13   automatically terminating offer of home-hospital instruction was inconsistent with the law, which

14   requires an IEP meeting prior to the expiration of services.  *Id.* at 20, ¶ 69; 30, ¶ 19 (citing Cal.

15   Code Regs. tit. 5, § 3051.4(d)).  The ALJ further noted the testimony of Katherine Waugh, the

16   school nurse, who stated that a physician release is required before a student may return from

17   home-hospital instruction.  *Id.* at 20, ¶ 69.  The ALJ also found that the District failed to comply

18   with state regulations requiring that home-hospital instructors consult with the student's previous

19   teacher to determine the course work to be covered, as Mrs. Broumas testified that no one

20   contacted her during the 2012-13 school year regarding K.A.'s educational program.  *Id.* at 21, ¶

21   71; 30, ¶ 20 (citing Cal. Code Regs. tit. 5, § 3051.4(d)).  Finally, the ALJ found that the District

22   had provided only 12 weeks of teaching instruction and missed 13 weeks, provided less than 3

23   hours of speech therapy from September 10, 2012 through March 28, 2013, and very limited OT

24   consultation.  *Id.* at 21, ¶¶ 70-72.  All three of these findings supported the ALJ's conclusion that

25   the District had failed to materially implement the August 29, 2012 IEP offer, thereby denying

26   K.A. a FAPE from August 29, 2012 to March 28, 2013.

27            **iv.  ALJ's Award of Remedies**

28            Based on her conclusion that the District had denied K.A. a FAPE from March 29, 2012 to

United States District Court
Northern District of California

May 31, 2012 and from August 29, 2012 to March 28, 2013, the ALJ awarded compensatory education to be delivered during the summer.  Specifically, the ALJ ordered the District to contract with Parents' ABA provider for three hours a day for 167 days.  The District was also ordered to provide one hour per day of home instruction from a credentialed special education teacher for 167 days, 68 hours of speech and language therapy, 15 minutes per week of OT consult for 34 weeks, and one hour a week of individual OT in the home for 34 weeks.  All services were ordered provided during the summer of each school year until completed.  OAH Decision 33-34.

In fashioning this remedy, the ALJ acknowledged that though Parents requested as compensatory remedies reimbursement of their out-of-pocket payments for K.A.'s ABA services from March 29, 2012 to the date of the hearing as well as placement at a non-public school, Father put on very "limited evidence" of these remedies.  *Id.* at 23 ¶¶ 80-81; 32, ¶ 28.  The ALJ noted the difficult question of "how to devise a remedy given [K.A.]'s failure to provide an evidentiary basis to award reimbursement for the ABA services already provided or future placement with a non-public school or agency" but proceeded to create the afore-described remedy based on her review of the testimonial and documentary evidence.  *Id.* at 32, ¶ 28.

### C. Procedural Background

On October 17, 2013, the District filed the instant lawsuit appealing the ALJ's adverse rulings on Issues 1 and 3 and her award of compensatory services.  Father counterclaimed with a cross-appeal of the ALJ's ruling in the District's favor on Issue 2 along with other claims that are not addressed here.  Both sides contest the appropriateness of the ALJ's remedy.

A proceeding on the merits was unfortunately delayed by Father's failure to comply with this Court's order to obtain counsel to represent K.A.'s interests.  *See* Order to Show Cause, ECF 22.  On May 29, 2014, the undersigned ordered Father joined as an indispensable party to represent his own interests under the IDEA in the education of his child and set a briefing schedule for cross-motions for summary judgment.  *See* ECF 31.  Father, proceeding *pro se*, did not seek summary judgment on his own claims but opposed the present Motion for Summary Judgment by the District.  *See* Def.'s Opp., ECF 49.  The parties appeared before the Court on September 4, 2014 for a hearing on the motion, and the Court requested supplemental briefing from the District,

which was completed on September 15, 2014.[8]  *See* Pl.'s Ltr., ECF 54.

## II.   LEGAL STANDARD

In any action brought before the district court pursuant to § 1415, the IDEA provides that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  This standard empowers a court to conduct a more detailed and independent analysis than afforded in more traditional administrative review settings, though there are limits to the types of "additional evidence" that a district court may hear.  *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1004-06 (9th Cir. 2011).  Moreover, the Ninth Circuit has noted that courts must give "due weight" to the state administrative proceedings and, at a minimum, "must consider the findings carefully."  *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 481 F.3d 770, 775 (9th Cir. 2007); *Ojai*, 4 F.3d at 1474; *see also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("It is hard to see what else the district court could do as a practical matter under the statute except read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of the evidence and giving due weight to the hearing officer's determinations.").  A court should give particular deference where the hearing officer's administrative findings are "thorough and careful," *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir.1994), or are based on credibility determinations of live witnesses, *Amanda J.*, 267 F.3d at 889.

While the petitioning party bears the burden of proof at the administrative level, *Schaffer*, 546 U.S. at 57, the party challenging an administrative decision in federal district court has the burden of persuasion on his or her claim, *Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396 (9th Cir. 1994), *superseded by statute on other grounds, as recognized in L.M. v. Capistrano Unified*

---

[8] In its supplemental letter brief, the District also requested that the Court deny Father's appeal on Issue 2 because he failed to file a motion for summary judgment.  Pl.'s Ltr. 3.  Because Father is proceeding *pro se*, the Court declines to find that he defaulted on his claims and has set Father's counterclaims for a limited bench trial consistent with 20 U.S.C. § 1415(i)(2) on December 12, 2014.

1    *Sch. Dist.*, 556 F.3d 900 (9th Cir. 2009).  In exercising its power of independent review, the courts

2    should not "substitute their own notions of sound educational policy for those of the school

3    authorities which they review."  *Ojai*, 4 F.3d at 1472.

4    **III.    DISCUSSION**

5         The District's motion for summary judgment challenges the ALJ's adverse rulings on two

6    of the three issues presented in the administrative due process hearing as well as her award of

7    compensatory services.[9]  First, the District contends that the ALJ erred in finding for K.A. on

8    Issue 1 and concluding that the District's March 29, 2012 letter was a predetermined offer that

9    denied K.A. a FAPE from March 29, 2012 to May 31, 2012.  The District also contends that the

10   ALJ erred in finding for K.A. on Issue 3 and concluding that the District had failed to materially

11   implement its August 29, 2012 IEP offer of home-hospital instruction, thereby denying K.A. a

12   FAPE from September 10, 2012 to March 28, 2013.  Third, the District contests the

13   appropriateness of the compensatory remedy fashioned by the ALJ for the periods of time in

14   which she found that K.A. had been denied a FAPE.

15        **A.    Issue One: The ALJ Erred in Finding that the District Predetermined its March
          29, 2012 Offer**

16

17        The District urges as erroneous the ALJ's conclusions that the District "unilaterally

18   predetermined" the March 29, 2012 offer and that such predetermination resulted in a denial of

19   FAPE to K.A.  Pl.'s Mot. 13.  Father's brief, though ostensibly an opposition to summary

20   judgment, does not address any of the District's points substantively, instead arguing Father's

21   belief that "the decision of the administrative due process hearing was not the result of a fair

22

_____

23   [9] The District asserts, as an initial matter, that the ALJ's entire conduct and ruling were injected
     with bias against school districts owing to her 11 years as an advocate representing students in
24   IDEA cases.  Pl.'s Mot. 11.  It appears that the ALJ disclosed this prior experience at the outset of
     the due process hearing and afforded the parties an opportunity to object to her presiding over the
25   case.  The school district did not object.  Hr'g Tr. 6-7.  Although the District now contends that
     this was the ALJ's first case and that, in hindsight, her questions during the hearing demonstrate
26   that she was biased against the District, Pl.'s Mot. 12, such contentions are not well taken given
     the District's failure to object at the outset.  The Court recognizes that it can be difficult for a new
27   judge to withdraw from a prior role as advocate, particularly when faced with a *pro se* party.
     However, the administrative record indicates that the ALJ appears to have conducted a thorough
28   and fair hearing, and that her questions were largely directed at eliciting clarifying testimony in
     view of Father's *pro se* status.

United States District Court
Northern District of California

United States District Court
Northern District of California

hearing" and taking issue with the unavailability of documents at the due process hearing relating to the June 8, 2012 IEP.  *See* Def.'s Opp.  After independent review of the record, the Court agrees that the weight of the evidence does not support a finding of predetermination.

A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement.  *W.G. v. Bd. of Tr. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992) ("*Target Range*"), *superseded by statute on other grounds, as recognized in R.B.*, 496 F.3d 932.  Predetermination is a species of procedural violation because the IDEA "requires that the placement be based on the IEP, and not vice versa."  *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1123 (9th Cir. 2011).  More often than not, if a student is eligible under the IDEA, a procedural violation that causes "some defect" in the student's IEP is a denial of a FAPE.  *See R.B.*, 496 F.3d at 940-41 (collecting cases and drawing distinction between cases involving eligible students and those seeking to establish eligibility).  Even given this trend, not all IDEA procedural errors involving eligible students result in a finding of a denial of a FAPE, and some errors "may be held harmless."  *M.L.*, 394 F.3d at 652; *see J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938 (2009).  As discussed above, a court must still consider whether the procedural error led to a substantive violation of the IDEA, or whether the procedural error caused the loss of educational opportunity, seriously infringed the parents' opportunity to participate in the IEP formulation process, or caused a deprivation of educational benefits.  *N.B.*, 541 F.3d at 1207.

As an initial matter, the Court takes judicial notice of the unchallenged determination of ALJ Johnson that the District arrived at and left the February 16, 2012 IEP meeting with an open mind and willingness to discuss (and continue discussing) Parents' goals and the Korb report.  Pl.'s RJN, Exh. C at 23, ¶¶ 19, 21; Fed. R. Civ. P. 201(b).  Thus, it is undisputed that the February 16, 2012 IEP draft was not predetermined.  The ALJ in the present case was asked to decide whether the March 29, 2012 offer letter, which incorporated the draft goals from the February 16, 2012 meeting, was predetermined because no further IEP team meeting had been convened.  A careful analysis of the offer letter, and of the events leading up to the letter indicates that the offer was not predetermined, nor did the District at any time adopt a "take-it-or-leave-it" position on the

1    March 29, 2012 offer letter.

2         As the District correctly notes—and the ALJ ignored—the March 29, 2012 offer letter

3    expressly indicated that the District was willing to consider Parents' input and to reconvene an IEP

4    meeting at their convenience to adjust the offered placement:

5              Contrary to your assertions, the District did consider your privately
               procured assessment (Dr. Korb) at the February 16, 2012 IEP.
6              Moreover, the District members of the IEP team would further
               consider this assessment and/or any other input to the IEP you
7              would like to provide if you would attend an IEP, as requested by
               the District.
8
               Be advised that the District stands ready, willing and able to hold an
9              IEP meeting if you agree to attend such a meeting.  If you have any
               questions, regarding this offer, or if you wish to meet in an IEP
10             meeting, please do not hesitate to contact me.

11   Mar. 29, 2012 IEP Offer, ECF 38-6.  Though the March 29, 2012 offer letter was based on an

12   incomplete IEP team meeting, most of the goals had already been discussed on February 16, 2012,

13   and any "predetermination" in the offer letter was only in the most technical sense, given the

14   District's expressed willingness to reevaluate its proposals with parental input.

15        The ALJ's determination that the District's only choice, when faced with Parents' refusal

16   to return to a continuation IEP meeting, was to proceed with a meeting with Parents *in absentia* is

17   an unwarranted extrapolation of the law.  OAH Decision 10, ¶ 24; 29, ¶ 15.  In cases in which the

18   Ninth Circuit has found predetermination or serious infringement on parental participation, the

19   school district generally developed the entire IEP without any parental input, refused to

20   accommodate the parents' requests to reschedule, or committed other serious errors in conjunction

21   with the failure to secure parental participation.  In *Anchorage School District v. M.P.*, 689 F.3d

22   1047 (9th Cir. 2012) ("*Anchorage*"), for example, the parents refused to attend an annual IEP

23   meeting and instead provided extensive written commentary on the school's IEP draft.  The school

24   district then chose to *revert* to a two year-old IEP, rather than continue the IEP process to consider

25   the parents' input.  The Ninth Circuit found this to be a substantive violation of the school

26   district's obligation to have a revised IEP in place every year.  *Id.* at 1056.  Similarly, in *Target*

27   *Range*, the school district committed a number of procedural errors—e.g., not including a

28   representative from the private school the student was attending at the time—at the IEP meeting,

United States District Court
Northern District of California

15

only one of which was the failure to bring the parents back to the table after they left the meeting in frustration.  *Target Range*, 960 F.2d at 1484-85.  Moreover, the present case was not a situation in which the District abjectly failed to accommodate the parents' scheduling requests, as in *Doug C. v. Hawaii Department of Education*, 720 F.3d 1038 (9th Cir. 2013).  *See also Shapiro*, 317 F.3d at 1078 (school district seriously infringed on parental participation by prioritizing the schedule of district staff members over the parents' request to reschedule).

Nor is this like the situation in *K.D. v. Department of Education, Hawaii*, on which the ALJ relies for the proposition that "[i]f a parent refuses to attend or is entirely unresponsive to the agency's requests to meet, the agency has a duty to move forward with the IEP process."  OAH Decision 28, ¶ 8.  In *K.D.*, the plaintiff's mother consistently failed to respond to the school district's repeated attempts to schedule an IEP meeting, whereupon the district proceeded with the meeting and developed an IEP without her.  The court found no denial of FAPE from conducting an IEP meeting without the mother's participation because the district's numerous documented efforts to work with the mother to find a mutually agreeable time and place for meeting was sufficient to satisfy its duty under the IDEA to involve parents in the IEP process.  *K.D.*, 665 F.3d at 1125.  Nothing in *K.D.* compels a district to conduct a follow-up IEP meeting when it knows the parents will not attend.  Furthermore, none of the cases cited by the ALJ address the unique situation presented here, where after substantial discussion of proposed goals at an IEP meeting with team members that arrived with open minds, the parents refuse to return to complete the IEP meeting due to their premature filing of a due process hearing on the basis that the team members had arrived at the meeting refusing to consider parental input.

The present situation is most similar to that presented in *N.R. ex rel. B.R. v. San Ramon Valley Unified Sch. Dist.*, No. C 06-1987 MHP, 2007 WL 216323 (N.D. Cal. Jan. 25, 2007), wherein the parties had experienced a similar breakdown in communication resulting in numerous due process complaints and stay puts, all while the school district attempted to satisfy its annual legal obligation to provide an updated IEP and placement for the student.  The court found that the school district's unilateral revision of an IEP after the conclusion of the annual IEP meeting did not deny the student's parents meaningful participation in the process because they had actively

and extensively participated in prior meetings concerning the development of the challenged IEP. *Id.* at *12-16.  The court also noted that the school district made every effort to include the parents in the process and that their exclusion from participation was due to their "conscious decision to stop cooperating with the District beginning in June 2005." *Id.* at *12; *see also E.P.*, 2007 WL 1795747, at *8-11 (no serious infringement of parental participation where parents participated in three out of four meetings to develop the challenged IEP and school district attempted in good faith to schedule the final meeting—that parents ultimately did not attend—at a mutually convenient time and place).

Likewise, here, any denial of K.A.'s parents' ability to participate in the IEP process was caused by Parents' conscious decision to stop cooperating with the District.  Instead of requesting that the March 9, 2012 continuation IEP meeting be rescheduled or providing a reason for which Parents were unable to attend, Father simply asked Ms. Ota to *cancel* the proposed March 9, 2012 meeting indefinitely "until further notice by us." *See* ECF 38-6, 2-3.  In fact, the ALJ found that "[t]he evidence established that Parents were unwilling to attend an IEP team meeting until the scheduled [due process] hearing had taken place." OAH Decision 9, ¶ 21.  This finding is well founded in the record, as pursuant to governing regulations, the District documented its attempts to reach Parents and bring them to a mutually agreed upon place and time for meeting.  34 C.F.R. § 300.345(d); *Shapiro v. Paradise Valley Unified Sch. Dist.*, 317 F.3d 1072, 1078 (9th Cir. 2003); *E.P. v. San Ramon Valley Unified Sch. Dist.*, C05-01390 MJJ, 2007 WL 1795747 (N.D. Cal. June 21, 2007).  Under such circumstances, holding a meeting without Parents present would have been as likely to draw another due process complaint as simply moving forward on the progress and goals that had already been discussed.[10]

To be sure, K.A.'s parents are not lawyers, and there is no evidence in the record that their

---

[10] While there may, as a practical matter, be benefits to the student from a collaborative IEP process even in the absence of parental participation, the most important stakeholders are the parents. *See M.M.*, 767 F.3d at 853-56 (9th Cir. 2014), as amended (Oct. 1, 2014) (parents denied meaningful opportunity to participate when school district did not provide them with test data that all other members of the IEP team had seen).  The ALJ identified no persuasive authority requiring the District to hold a continuation IEP meeting after Parents' unequivocal refusal to attend.

United States District Court
Northern District of California

mistaken interpretation of the availability of a "stay put" was made in bad faith.  However, the right to represent one's own interests does not carry with it the right to impose one's errors on other parties to their detriment, and Parents cannot intentionally place the District in a position where any course of action would violate the IDEA.  Parents' mistaken interpretation of the law here placed the District in the untenable position of choosing between making an IEP offer without further parental input or violating their obligation to have an updated IEP offer and placement for K.A. each year.  *Anchorage*, 689 F.3d at 1056.  The ALJ correctly cites *Doug C.* for the proposition that, when confronted with such a choice between "complying with one procedural requirement of the IDEA or another," the District was under an obligation to "make a reasonable determination of which course of action promotes the purposes of the IDEA and is least likely to result in the denial of a FAPE."  720 F.3d at 1046.  In light of all of the evidence in this case, it seems clear that the District made a reasonable determination to offer a revised IEP based on the parental input already received on February 16, 2012 and to invite continued parental input in its March 29, 2012 letter.

The facts of this case are unlike the situation in *Doug C.*, where the parent was willing to participate but requested an IEP team meeting be scheduled a few days after the expiration of the extant IEP.  Faced with denying parental participation or missing the IEP deadline by a few days, the school district in *Doug C.* chose the former, and the Ninth Circuit found that the "Department's decision to prioritize strict deadline compliance over parental participation was clearly not reasonable."  *Id.* at 1046.  Here, although Parents were clearly invested in K.A.'s IEP, they affirmatively refused to return to the IEP meeting during the pendency of their premature due process complaint.  Thus, rather than missing the deadline to have a new IEP in place by several days, the District had to choose between proceeding on an outdated IEP for an indefinite period of time—an absolute denial of FAPE as outlined in *Anchorage*, 689 F.3d at 1056—or making an offer based on a partially completed IEP meeting where a substantial number of the proposed goals had already been discussed with Parents.  The District reasonably determined that offering a placement based on an IEP partially completed with parental input was not so grave a procedural violation as to "seriously infringe" Parents' opportunity to participate in the process, and was

1    therefore the better option than proceeding with an outdated IEP.  The ALJ erred in failing to

2    afford the District "reasonable latitude" in making that determination.  *Id.*

3              The ALJ's finding that the procedural error in the March 29, 2012 offer letter denied K.A.

4    educational opportunity because there was a "strong likelihood" that alternative educational

5    possibilities for K.A. "would have been better considered" is similarly without evidentiary

6    support.[11]  OAH Decision at 28, ¶ 12; 29-30, ¶¶ 17-18; *see* Pl.'s Mot. 17.  The placement offer

7    was made on the basis of an IEP that had been partially developed with parental participation.

8    When the February 16, 2012 meeting concluded, what remained to be addressed was "finish the

9    goals, consider the outside assessment, and discuss placement and services."  OAH Decision at 8,

10   ¶ 18 n.11.  Ms. Porter testified that her goals would not have changed because Parents verbally

11   accepted them at the February 16 meeting.  Similarly, Ms. Chandru testified that her goals would

12   not have changed even after considering the Korb report because she, in her independent

13   judgment, did not believe K.A. needed any gross motor skills goals.  This testimony, on which the

14   ALJ did not make any credibility findings, suggests that certain members of the team had

15   considered parents' input in making the March 29, 2012 offer and is corroborated by the minimal

16   changes made to the June 8, 2012 IEP, which was developed after full consideration of the Korb

17   report.  OAH Decision 11, ¶ 31.  That the parental input became a moving target, or that the goals

18   changed after the passage of time and based on more recent observations of K.A., does not mean

19   that the March 29, 2012 offer letter was blind to parental input.[12]  In fact, the record supports the

20   opposite conclusion—that the IEP team members considered Parents' requests seriously on

21   _____

22   [11] The ALJ correctly found that Father failed to meet his burden to show that K.A. had been
     deprived of educational benefit.  *Id.* at 29, ¶ 17.

23   [12] Though the ALJ made no findings on this point, the record suggests that Parents may not have

24   been satisfied with anything short of the District's adoption of Dr. Korb's recommendation in its
     entirety.  Of particular concern is ALJ Johnson's finding that "Father's disdain and lack of respect

25   for District's educational program were evident" in the due process hearing before her.  Pl.'s RJN,
     Exh. C, at 8-9, ¶ 20.  The IDEA's encouragement of parental participation does not require the

26   District to bend to every parental demand, only that the District give due consideration to the
     parents' requests in developing an IEP that meets an eligible student's educational needs.  *Ms. S.*

27   *ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1132 (9th Cir. 2003) (school district under
     no obligation to grant parent "veto" over any individual IEP provision), *superseded by statute on*

28   *other grounds, as recognized in C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 575 F.
     App'x 796, 799 (9th Cir. 2014).

United States District Court
Northern District of California

1   February 16, 2012, and that the March 29, 2012 offer letter reflects goals that were confirmed after

2   discussion with Parents.  As such, the evidence shows that the District's actions did not seriously

3   infringe on parental participation, let alone deprive K.A. of some educational opportunity.

4          At bottom, the preponderance of the evidence indicates that the ALJ's ruling on Issue 1

5   was erroneous: the District conducted a meeting with parents on February 16, 2012 at which the

6   IEP team was open to the parents' input; the Korb report was read, considered, and at least

7   minimally discussed at that meeting; the District attempted to convene a meeting to complete the

8   IEP process, but parents refused to attend and requested that the District *cancel* the meeting until

9   further notice; and the District, without ability to obtain further parental input, put together on

10  March 29, 2012 an offer based on the draft that had been discussed at the February 16, 2012

11  meeting with the express reservation that the IEP could be altered if Parents would return to an

12  IEP meeting.  This evidence supports the more likely finding that the District's March 29, 2012

13  offer letter set forth the agreed elements of the IEP and an offer of services and goals consistent

14  with the professional assessment of the specialist members of the IEP team.  In that the offer letter

15  clearly invited continued parental input and that Parents steadfastly refused to return to the IEP

16  meeting, the March 29, 2012 offer letter clearly was not a take it or leave it offer.  The evidence

17  therefore simply does not support the ALJ's finding of predetermination.  Based on the foregoing,

18  it was error to conclude that the District's March 29, 2012 offer was a predetermined placement

19  that denied K.A. a FAPE from March 29, 2012 to May 31, 2012.  The District's Motion for

20  Summary Judgment is accordingly GRANTED on Issue 1, and the ALJ's ruling is REVERSED.

21          **B.    Issue Three: The ALJ Did Not Err in Finding that the District Failed to
22                  Materially Implement the August 29, 2012 and Thereby Deprived K.A. of a
                    FAPE**

23          The District challenges the ALJ's determination that the District materially failed to

24  implement its August 29, 2012 offer of home hospital instruction and advances three arguments in

25  support: (1) the ALJ inappropriately extended the home-hospital instruction beyond the offered 90

26  days; (2) the ALJ failed to properly consider Parents' lack of cooperation in the delivery of

27  services; and (3) the ALJ should have given the District credit for the services actually delivered.

28  Pl.'s Mot. 18; Pl.'s Ltr. 3-4.  The District fails to persuade on each of these arguments.

United States District Court
Northern District of California

United States District Court
Northern District of California

As a preliminary matter, the District expressly acknowledges that it "did not provide all of the home-teaching services required during the 90-day placement period." Pl.'s Mot. 19. Furthermore, in rejecting the District's parental obstruction argument, the ALJ specifically identified the testimony on which she could not rely and found that Parents at no time offered a "take-it-or-leave-it time period that [K.A.] was available" and that the scheduling constraints were those of the District's staff. *Id.* at 17, ¶ 54. The District has not identified any testimony that the ALJ failed to consider and, as such, this Court will not disturb those findings. Thus properly framed, the District's appeal of the ALJ's ruling on Issue 3 is not about whether it failed to implement the offered home instruction services, but rather about how much compensatory education is owed.

As to the duration of the offered home-hospital instruction and the corresponding period in which K.A. was denied a FAPE, the District argues that the ALJ should only have considered a 90-day IEP period because the August 29, 2012 offer was self-terminating such that K.A.'s placement reverted to the June 8, 2012 offer at termination. Pl.'s Mot. 18-19. In her decision, the ALJ explained that a "temporary" home-hospital instruction IEP does not comport with California Code of Regulations Title 5, § 3051.4, which states that the IEP team shall "review, and revise, if appropriate the IEP whenever there is a significant change in the pupil's current medical condition," and "meet to reconsider the IEP prior to the projected calendar date for the pupil's return to school." OAH Decision 30, ¶ 19-20 (citing Cal. Code Regs. tit. 5, § 3051.4(c)-(d)). No IEP meeting was held for the August 29, 2012 home-hospital placement offer, and no IEP meeting was held in advance of terminating the home services.

The District's argument does not address this regulatory requirement, instead pointing to cases from other circuits concluding that an expressly temporary placement is not the "stay put" placement when the "stay put" provisions of 20 U.S.C. § 1415(j) are invoked while the parties are in litigation. Pl.'s Mot. 19 (citing *Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 7-8 (1st Cir. 1999); *Leonard v. McKenzie*, 869 F.2d 1558, 1563-64 (D.C. Cir. 1989). These cases are not binding authority, do not interpret the state regulation applied in the ALJ's decision, and are not even applicable where, as here, there was no pending due process complaint at the time such that a

"stay put" was in order pursuant to § 1415(j).[13]  The Court, on its own review of the law, found one case from the Eastern District of California that appears to be on point but does not address Cal. Code Regs. tit. 5, § 3051.4.  *See W.A. ex rel S.A. v. Patterson Joint Unified Sch. Dist.*, No. CV F 10-1317 LJO SMS, 2011 WL 2925393, at *33 (E.D. Cal. July 18, 2011) (concluding that "stay put" placement applied at termination of temporary home hospital instruction, and that "stay put" placement was last agreed upon permanent placement).

Because California law does not appear to permit the type of temporary special education placement that the District was offered on August 29, 2012, and because the applicable—and unrebutted—regulation requires prior IEP consultation before changing a student's home "placement," the District has failed to demonstrate that the ALJ erred in considering an IEP period of August 29, 2012 to March 28, 2013, as opposed to the 90 days offered.[14]

As to whether or not the District should get credit for any of the home-hospital instruction actually provided, in her decision, the ALJ again pointed to California Code of Regulations Title 5, § 3051.4, which requires, *inter alia*, that the teacher providing home instruction consult with the student's previous school and teacher regarding the student's coursework.  *Id.* at (f).  The ALJ found that the District's implementation of the August 29, 2012 had failed to comply with this subdivision and accordingly amounted to a "wholesale failure to implement" the home-hospital teaching from September 10, 2012 through March 28, 2013.  OAH Decision 21, ¶ 71; 31, ¶¶ 23, 27.  The District does not challenge the applicability of this regulation, nor the ALJ's findings that the home-hospital instructors had failed to comply with this regulation.

It cannot be gainsaid, however, the District did provide some home instruction through Ms. Cheechoo, who was not called to testify about her instruction.  *Id.* at 19, ¶ 64.  Furthermore, the requirement to consult with K.A.'s previous teacher does not extend to the provision of speech and

---

[13] ALJ Johnson rendered her decision on Parents' due process complaint regarding the February 16, 2012 IEP meeting on July 21, 2012.  *See* Pl.'s RJN Exh. C.

[14] The Court notes this regulation differs from the truly temporary home hospital instruction contemplated in California Education Code § 48206.3, which applies to students in general education and specifically excludes those special education students that require an individualized education program.  Cal. Educ. Code § 48206.3(b)(2).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    OT services, for which the ALJ did not credit the District for services rendered.  On balance, given

2    the delayed and inconsistent provision of services, failure to consult with K.A.'s prior teacher, and

3    automatic termination of the home-hospital instruction, the Court does not find fault with the

4    ALJ's conclusion that the District failed to materially implement the August 29, 2012 offer, thus

5    denying K.A. a FAPE from August 29, 2012 to March 28, 2013.  The degree to which the District

6    should be credited for instruction already provided is a factor to consider in fashioning the

7    appropriate compensatory remedy, as discussed below.  The District's Motion for Summary

8    Judgment is accordingly DENIED on Issue 3, and the ALJ's ruling is AFFIRMED.

9            **C.    Remedies: The ALJ Erred in Devising a Remedy With No Evidentiary Support**

10           Both parties appeal the remedy ordered by the ALJ.  Father contends that the only

11   appropriate remedy is for K.A. to be placed in a private institution of the parents' choice, with the

12   cost of education and transportation to be reimbursed by the District.[15]  Answer and Amended

13   Counterclaim at 7, ECF 42.  By contrast, the District contends that the ALJ erred in ordering

14   compensatory education and services that are disproportionate to the violations found and in

15   failing to credit the school district for its voluntary offer and implementation of make-up services.

16   Pl.'s Mot. 23-25.

17           Compensatory education is an equitable remedy that entails a fact-specific, individualized

18   assessment of a student's current needs.  *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 524

19   (D.C. Cir. 2005); *see generally Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489,

20   1496 (9th Cir. 1994) ("*Puyallup*"); *School Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359,

21   374 (1985).  As it is an equitable remedy, the conduct of both parties—including the parents—is

22   relevant to the consideration of compensatory education.  *Puyallup*, 31 F.3d at 1497.  Although, in

23   some instances, day-for-day compensation may be awarded to make up for lost services, there is

24   no obligation to do so.  "Appropriate relief is relief designed to ensure that the student is

25   appropriately educated within the meaning of the IDEA."  *Id.*

26           Here, the Court agrees with the District that the ALJ's award of compensatory education

27

28   [15] Father argued at the September 4, 2014 hearing that the ALJ's compensatory remedy was "torture" for K.A., given his other educational and therapy requirements during the day.

United States District Court
Northern District of California

1    lacks evidentiary support, as even she struggled to develop the appropriate remedy in the face of

2    Father's failure to provide an evidentiary basis for his requested relief.  OAH Decision 32, ¶ 28.

3    The ALJ appears to have relied upon the 2011 evaluations performed by Dr. Korb and Patricia

4    Strass, as a starting point, and on a March 15, 2013 IEP document with present levels of

5    performance detailed by Ms. Cheechoo as an ending point.  *Id.* at 22-23, ¶¶ 76-84.  Based on that

6    comparison, the ALJ determined that K.A. had regressed and required "intensive" compensatory

7    education for 167 days in order to make "educational progress."  *Id.* at 24, ¶ 83.  The ALJ ordered

8    further ABA instruction on Dr. Korb's and Ms. Strass's recommendations from 2011, ignoring

9    evidence that Parents had obtained intensive ABA intervention throughout the relevant time

10   period and that Dr. Korb's own report recommended only a six-month trial of ABA in order to see

11   K.A.'s response to that therapy.  Korb Report 8, ECF 38-5, 40.  Moreover, the ALJ's focus on

12   K.A.'s status in the March 15, 2013 IEP to demonstrate regression since 2011 ignored other

13   potential causes of regression, such as his physical seizure disorder or his lack of socialization

14   from having been removed from the classroom environment.  As such, based on an independent

15   review of the administrative record, the ALJ's award of essentially day-for-day compensatory

16   education to achieve an undefined level of "educational progress" lacks support in the evidence

17   presented at the due process hearing.

18          The District's Motion for Summary Judgment is accordingly GRANTED on this issue, and

19   the ALJ's award of compensatory education is VACATED.

20          **D.    The Issue of Remedies Must be Remanded**

21          Given the paucity of evidence developed at the due process hearing, the Court cannot

22   fashion an appropriate remedy in a vacuum.  As the IDEA permits the undersigned to "grant such

23   relief as the court determines is appropriate," this Court, in its discretion, finds it appropriate to

24   remand the issue of compensatory services to the ALJ for further evidentiary development.[16]  20

25   _____

26   [16] This Court could, alternatively remand the issue to an IEP team to develop an appropriate plan
     for compensatory services.  *Maine School Admin. Dist. No. 35 v. Mr. R*, 321 F.3d 9, 20 (1st Cir.

27   2003); *see also Mr. I ex rel. L.I. v. Maine School Admin. Dist. No. 55*, 480 F.3d 1, 26 (1st Cir.
     2007) (appellate court held it was "sensible" for district court to order the school district to

28   convene an [IEP] meeting to develop an IEP for student with special needs, since [IEP team] could
     better assess the student's special needs).

United States District Court
Northern District of California

1    U.S.C. § 1415(i)(2).  This remand was requested by the District at the September 4, 2014 hearing,

2    based upon their preference that the ALJ, with more special expertise in the area, be the trier of

3    fact in the first instance.  Father indicated at the hearing that he prefers the issue of remedies to be

4    tried by the undersigned because he desires a ruling with the imprimatur of a United States federal

5    court should he and his family move back to India.  The Court agrees with the District that the

6    ALJ's expertise in this area outweighs Father's personal reasons for seeking a federal court ruling.

7    In any event, either party may continue to invoke the IDEA's judicial review provision, following

8    the ALJ's ruling on remedies.

9        On remand, the Court urges the ALJ to consider exercising her discretion to order a new

10   IEP meeting to develop further evidence to support an appropriate compensatory remedy.  *See*

11   *Struble v. Fallbrook Union High Sch. Dist.*, No. 07CV2328-LAB CAB, 2008 WL 8215426, at *14

12   (S.D. Cal. Aug. 29, 2008) *report and recommendation adopted as modified sub nom. Mary Struble*

13   *v. Fallbrook Union High Sch. Dist.*, No. 07CV2328-LAB CAB, 2011 WL 291217 (S.D. Cal. Jan.

14   27, 2011) (reasoning that "[i]f it is appropriate for a district court to remand a compensatory

15   education award to an IEP team, then there is no reason why an ALJ could not refer a matter back

16   to an IEP team to devise an IEP consistent with the ALJ's decision" and citing decisions).

17       Further, in its supplemental brief, the District recommended that compensatory education

18   be assessed based upon K.A.'s present need and requested that the Court set specific parameters

19   for the consideration of remedies on remand.  Pl.'s Ltr. 1-2.  While the Court does not agree with

20   the District's requested parameters, the Court agrees that some clarifications are in order.

21       As this Court has already determined, the ALJ erred in finding a denial of FAPE from

22   March 29, 2012 to May 31, 2012, but is affirmed in finding a denial of FAPE from August 29,

23   2012 to March 28, 2013.  As such, any remedy should be limited to compensating for the loss of

24   educational benefit from August 29, 2012 to March 28, 2013.  The compensatory education award

25   should not be focused on day-for-day or hour-for-hour compensation, but rather on K.A.'s present

26   needs and the degree to which those needs can be rectified by the District's services.  In other

27   words, on remand, the ALJ can develop evidence of K.A.'s present needs and consider to what

28   extent those needs were affected by the District's actual provision of instruction services from

United States District Court
Northern District of California

1    August 29, 2012 to March 28, 2013, and to what extent any regression is attributable to the failure

2    of implementation as opposed to other factors such as K.A.'s physical health or his removal from

3    the school active learning environment.  Thus, although the District should not be credited hour-

4    for-hour for the instruction it did provide, the assessment of K.A.'s present need and regression

5    during the FAPE denial period should take into consideration any positive effects that the

6    District's limited services provided, balanced against factors—such as physical considerations and

7    removal from school—over which the District had no control.  The compensatory education

8    should thus bring K.A. to the level at which he could have reasonably been expected to be, in light

9    of all circumstances, had the District complied with the August 29, 2012 IEP.

10           As to Father's request for a private placement, the Court will not foreclose this option but

11   notes only that it is unclear how prospective placement in a private institution, presumably for the

12   foreseeable future, is an appropriate remedy to compensate for *lost* education opportunity and

13   benefits from August 29, 2012 to March 28, 2013.  Father has not challenged the *substantive*

14   appropriateness of the August 29, 2012 IEP, only the District's failure to materially implement it.

15   As such, the Court leaves it to the ALJ's discretion whether she will take and consider evidence of

16   a private institution as an appropriate compensatory remedy for the District's material failure to

17   implement the August 29, 2012 home-hospital instruction IEP.

18           Unfortunately, obstinance and over-litigation can cause the IEP process to break down, and

19   the courts must necessarily intervene.  Given that such a breakdown may have occurred here, the

20   ALJ may consider referring the parties to mediation to address their communication problems.

21   *See Anchorage*, 689 F.3d at 1052.  Though the courts stand ready to remedy violations of the

22   IDEA, the hope underlying the Act is that parents and schools—the parties who know a student

23   best and are best able to assess his educational needs—will be able to collaboratively develop a

24   placement that provides the student with a FAPE.  This Court cannot order the parties to get along,

25   but it may be that cooperation between the key stakeholders will result in a more appropriate plan

26   for K.A. than anything an ALJ or this Court can fashion.  If the parties cannot work it out, then a

27   court-ordered remedy is the bitter pill that all sides must swallow.

28

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that the District's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  The ALJ's ruling on Issue 1, finding that the March 29, 2012 IEP offer was predetermined and denied K.A. a FAPE, is REVERSED.  The ALJ's ruling on Issue 3, finding that the District materially failed to implement the August 29, 2012 IEP offer and thereby denied K.A. a FAPE from August 29, 2012 to March 28, 2013 is AFFIRMED.  The ALJ's award of compensatory services is VACATED and REMANDED for further consideration consistent with this order.

**IT IS SO ORDERED.**

Dated: December 2, 2014

BETH LABSON FREEMAN
United States District Judge